UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CURRY SAUSEDA** | **CIVIL ACTION NO. 25-1061** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JERRY EDWARDS, JR.** |
| **WARDEN CUPP, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Curry Sauseda,[1] a pre-trial detainee at Richland Parish Detention Center ("RPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately July 22, 2025, under 42 U.S.C. § 1983. He names the following Defendants: Warden Cupp, Nurse Kedra Vaughn, and Medical/R.P.D.C. Nursing Department/medical nurses.[2] For reasons that follow, the Court should retain Plaintiff's claims against Nurse Vaughn but dismiss Plaintiff's claims against the remaining Defendants.

**Background**

Plaintiff fell and injured his arm on March 11, 2025. [doc. # 1, p. 3]. He suggests that he filed three sick calls the same day; however, the "nurse in charge," Kedra Vaughn, never responded to his requests for care. [doc. # 7, p. 1].

Plaintiff states that on March 15, 2025, he was in "so much pain that [he] could not even write . . . ." [doc. # 7, p. 1]. He attaches an "Offender Request Form" dated March 15, 2025, in

---

[1] Plaintiff also uses the name, Manuel Sauseda, when referring to himself. [doc. #s 1-2, p. 6; 7, p. 1].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

which another inmate wrote on his behalf that he fell, that his right arm was numb and tingling, that he could not sleep at night, that he needed an M.R.I., and that although he "gave Mr. Hill a request to turn in for" him, he had not "heard from the nurse" to date. [doc. # 1-2, p. 6]. An official named Frank Dear responded to Plaintiff's request, stating that Plaintiff needed to write a "sick call to the nurse" and "tell her what has happened." *Id.*

Plaintiff claims that for about twelve days after he fell, he waited in excruciating pain without any pain medication before Nurse Vaughn "finally took" him to a hospital, where he received x-rays which revealed that his arm was broken. *Id.* He claims further that after he went to the hospital, Vaughn did not provide any medication or treatment for his injury. *Id.*

Plaintiff claims that one week later, Vaughn informed him that he only sustained a bruised bone and that his arm was not broken. [doc. # 7, p. 1]. Plaintiff suggests, however, that Vaughn knew his bone was broken yet failed to give him a cast, other medical equipment, or any other treatment to "realign the broken bone." *Id.* She informed him that she "forgot the x-rays and couldn't show [them] to" him. *Id.* Plaintiff maintains that because Vaughn failed to provide treatment for his broken bone, the bone healed improperly. *Id.*

On May 25, 2025, after "two months of complaining," "they took [Plaintiff] to LSU in Monroe, LA, where" he received an x-ray, and a doctor informed him that his arm was broken but that "it was too late to do anything about it." [doc. # 7, pp. 1-2]. He states that his injury will plague him for the remainder of his life. *Id.*

Plaintiff also faults Warden Cupp, alleging that Cupp "is the head warden of the facility" and is responsible for Plaintiff's well-being because Plaintiff is in his custody. [doc. # 1, p. 3]. He adds: "As warden of the facility Mr. Cupp failed to assist me with ethical medical care while in his custody and care." *Id.*

2

For relief, Plaintiff seeks monetary compensation. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v.*

*Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

    A. Nurse Vaughn

The Court should retain Plaintiff's claims against Nurse Vaughn. He filed three requests for medical care when Nurse Vaughn was the head nurse, yet Vaughn never responded. While he does not specify exactly what he stated in his requests—and therefore what Vaughn knew—he does suggest that his requests included information similar to what he included in the request form he directed to Warden Dear on March 15, 2025, which stated that he fell, that his right arm was numb and tingling, that he could not sleep at night, that he needed an M.R.I., and that he had not "heard from the nurse" to date. [doc. # 1-2, p. 6]. Thus, construing his allegations liberally and in his favor, he plausibly alleges that Vaughn knew he was exposed to a substantial risk of serious harm and responded with deliberate indifference. *See Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (holding that prison doctor and nurses were subjectively aware of risk to inmate's health after his "urgent and repeated requests for immediate medical treatment" for his broken jaw and "complaints of excruciating pain").

Further, Plaintiff claims that Vaughn failed to provide any medical care while he suffered excruciating pain for twelve days after he fell. He alleges that aside from transporting him to a hospital twelve days after he fell—where he received only x-rays—Vaughn failed to provide any medical care. That delay alone constitutes deliberate indifference, and Plaintiff's extreme pain plausibly reflects substantial harm.

In addition, despite allegedly knowing that x-rays revealed that Plaintiff's arm was broken, Vaughn allegedly failed to provide any medication, a cast, or other medical equipment to treat the break. He further suggests that Vaughn deliberately concealed the break, telling him that she forgot the x-rays and could not show them to him.

Plaintiff then waited until May 25, 2025, to receive care at a hospital, where a physician informed him that he did break his arm but that it was too late "to do anything about it." Plaintiff therefore plausibly alleges that Vaughn's delay in, or failure to provide, medical treatment caused him substantial harm (i.e., an improperly healed bone and excruciating pain during the delay).[4] *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422-23 (5th Cir. 2017) ("The pain suffered during a delay in treatment can constitute a substantial harm . . . ."); *Petzold v. Rostollan*, 946 F.3d 242, n.30 (5th Cir. 2019) (suggesting that severe, excruciating pain from a fractured ankle combined with a two-to-three-day delay in treatment could constitute substantial harm).

Finally, while Vaughn arguably provided some medical care by arranging visits to hospitals, it is plausible that she failed to provide any *meaningful* care, which amounts to

---

[4] Plaintiff also claims that RPDC never provided him medication that a physician prescribed on May 15, 2025. [doc. # 7, p. 2]. Plaintiff, however, does not name RPDC as a defendant and, even if he did, it is unamenable to suit. *See* FED. R. CIV. PROC. 17(b)(3); LA. CIV. CODE art. 24.

deliberate indifference.[5]

Again construing Plaintiff's claims liberally and in his favor at this early stage of the proceeding, he plausibly alleges that he had a serious medical need and that Vaughn knew of yet disregarded the substantial risk of serious harm to which he was exposed.

B. Warden Cupp

Plaintiff alleges that Warden Cupp "was notified and informed on 03-15-2025 to what had happen [sic] on 03-11-2025." [doc. # 7, p. 2]. He adds: "Therefore, at that initial moment it became his responsibility to ensure my well-being and safety while being housed at his facility under custody. He made no attempts to make the situation resolute." *Id.*

Plaintiff, however, does not plausibly allege that Cupp knew of a substantial risk of serious harm. Specifically, he does not explain how he notified Cupp of the injury he suffered or how Cupp otherwise knew of the injury. He informed Cupp about "what happen[ed]," but he does not detail what he told Cupp.[6] More importantly, he does not allege that he requested

---

[5] *See Ledesma v. Swartz*, No. 97-10799, 1997 WL 811746, at *1 (5th Cir. 1997) (unpublished) (per curiam) (holding that prisoner stated a deliberate indifference claim by alleging that a prison physician responded to the prisoner's complaints of a broken jaw from a fall with nothing more than Motrin, a liquid diet, and scheduling x-rays five days later); *see also Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 309 (5th Cir. 2024) ("While Dr. Corley did treat Newsome's immediate symptom of gas with anti-gas medication, Plaintiffs have presented evidence that he did not treat Newsome for Addison's disease. Responding to a serious medical issue with such a cursory level of care may still constitute deliberate indifference."); *Galvan v. Calhoun Cnty.*, 719 F. App'x 372, 375 (5th Cir. 2018) (concluding that a prisoner stated a deliberate indifference claim where prison officials responded to his complaints of excruciating stomach pain by offering only Pepto-Bismol and a home remedy and only granting him access to a prison doctor three days later); *Alderson v. Concordia Par. Corr. Facility*, 848 F3d 415, 422-23 (5th Cir. 2017); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014); *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009).

[6] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told them that he "did not feel well and [that] he wanted to go to the hospital."); *Roberts v. Lessard*, 841 F. App'x 691 (5th Cir. 2021) (Correctional center guards were not subjectively

medical care from Cupp. And while he suggests that he wrote to Cupp on March 15, 2025, the pleadings only reveal that he wrote to Warden *Dear* about his injury on March 15, 2025.[7] [doc. # 1-2, p. 6].

The Court should dismiss this claim against Warden Cupp.

### 3. Supervisory Liability

Plaintiff claims in his initial pleading that Warden Cupp "is the head warden of the facility" and is responsible for his well-being because he is in Cupp's custody. [doc. # 1, p. 3]. He adds: "As warden of the facility Mr. Cupp failed to assist me with ethical medical care while in his custody and care." *Id.* In his amended pleading, Plaintiff alleges that Cupp is in charge of the entire staff at RPDC, and therefore he is responsible for his employees' actions or inaction. [doc. # 7, p. 2]. He repeats that Cupp is in charge at RPDC and that it is his responsibility to ensure Plaintiff's safety at the facility because Plaintiff is in his custody. *Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v.*

---

aware that inmate faced substantial risk of harm even though guards were aware that inmate was displaying stroke symptoms; inmate's symptoms, which included sweating, slurring speech, and trouble controlling movements, could also have suggested that he was intoxicated, and it was uncontested that guards believed the inmate was intoxicated).

[7] As discussed below, Plaintiff's claims against Cupp appear primarily grounded in vicarious liability at best.

*Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Apart from the allegations against Warden Cupp discussed above in the previous section, Plaintiff does not plausibly allege that Cupp affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between the defendants' conduct and any alleged constitutional violation.[8]  Rather, Plaintiff appears to name Cupp as a defendant because Cupp is the warden; in so doing, Plaintiff pleads only vicarious liability.  *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . ."); *Lott v. Edenfield*, 542 F. App'x 311, 315 (5th Cir. 2013) ("[T]he complaint suggests that Lappin and Holder were aware of the conditions because they are 'the governmental authorities charged with oversight . . . .'  This is essentially a theory of respondeat superior[.]").

Plaintiff does not allege that Cupp implemented an unconstitutional policy, practice, custom, or procedure.[9]

---

[8] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

[9] *See also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("If Sheriff Belt did not knowingly disregard Thompkins' pleas to see a doctor, he cannot be held liable unless he knew the jail's system was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs—*i.e.,* was unconstitutional—and failed to properly attempt to correct it, *and* unless his action or inaction in this respect caused Thompkins' injuries. . . . The sole possible basis for supervisory liability identified by the district court was that '[t]here either should have been professional medical attention available on the premises on a regular basis, or speedy access to the same.' However, Thompkins adduced no evidence whatever that the jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to any other

Accordingly, the Court should dismiss Plaintiff's remaining claims against Cupp.

**4. Medical/R.P.D.C. Nursing Department/Medical Nurses**

Plaintiff initially named Medical/R.P.D.C. Nursing Department/medical nurses as a defendant. The undersigned ordered Plaintiff to file an amended pleading and provide a specific defendant's name, informing Plaintiff that "Medical" and "R.P.D.C. Nursing Department" are not proper defendants. [doc. # 4]. In Plaintiff's amended pleading, he appears to identify Nurse Vaughn as the member of the Medical/R.P.D.C. Nursing Department/medical nurses from whom he seeks relief.

To the extent Plaintiff continues to seek relief from Medical/R.P.D.C. Nursing Department/medical nurses as a single entity, this entity is not amenable to suit. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

The Court should dismiss Plaintiff's claims against this entity because it does not qualify as a juridical person. *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."); *see also Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273,

---

inmate, or that the sheriff was otherwise actually informed or consciously believed that the policy would expose prisoners to substantial risk of significantly unmet serious medical needs, and we find in the record no substantial evidence that the jail's policy for inmate medical treatment was constitutionally defective during the time Thompkins was incarcerated there. Accordingly, we conclude that Sheriff Belt cannot be held liable on the theory that he implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in the one particular instance of Thompkins' back injury.").

283 (5th Cir. 2002).

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that with the exception of the claims against Nurse Vaughn, Plaintiff Curry Sauseda's claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 4th day of December, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge